IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:18-cv-03286-RM-SKC

PENSFORD FINANCIAL GROUP, LLC,

    Plaintiff,

v.

303 SOFTWARE, INC.,
MATTHEW JAFFE, and
DAMON DELGADO,

    Defendants.

---

**ORDER**

---

This matter is before the Court on Defendants' motion to dismiss six of the eight causes of action asserted against them by Plaintiff. (ECF No. 20.) The motion has been fully briefed. (ECF Nos. 28, 29.) The Court has reviewed the pleadings, case file, and applicable law. For the reasons stated below, the motion is granted in part and denied in part.

**I.    LEGAL STANDARD**

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual

allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

To determine whether a claim is plausible, a court considers "the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quotation omitted). However, if the allegations "are so general that they encompass a wide swath of conduct, much of it innocent," the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quotation omitted).

## II.   BACKGROUND

For present purposes, the Court accepts as true the allegations in the complaint. Plaintiff is an interest rate advisory firm that wanted to offer its clients a way to digitally and efficiently manage their commercial loan portfolios. (ECF No. 2 at ¶ 1, 11.) It began soliciting bids from software developers in August 2017. (*Id.* at 1.) Defendant 303 Software, Inc., develops custom web and mobile applications for businesses. (*Id.* at ¶ 12.) Defendants submitted a proposal to Plaintiff in September 2017, stating that they could complete the project within six months and at a cost lower than the other bids. (*Id.* at ¶ 1.) The proposal contemplated a four-phase approach that would cost between $200,000 and $400,000. (*Id.* at ¶¶ 17, 19.) Following weeks of negotiations, Defendants sent Plaintiff a revised proposal with a total cost of $537,000. (*Id.* at ¶ 27.) Further negotiations ensued, and in November 2017 the parties executed two

agreements—a Master Services Agreement ("MSA") and a Statement of Work ("SOW"). (*Id.* at ¶ 36.)

In December 2017, the first phase was completed, and Plaintiff authorized moving forward with the next phase of the project. (*Id.* at ¶ 42.) In March 2018, Defendants informed Plaintiff they had fallen behind schedule, and by July 2018, both parties recognized that the project would not be completed by September 2018. (*Id.* at ¶¶ 44, 51.) Defendants proposed a Second Statement of Work ("SSOW"), assuring Plaintiff that it would be completed under budget and without further delays. (*Id.* at ¶ 56.) Plaintiff relied on these assurances when the parties executed the SSOW. (*Id.* at ¶ 57.)

In October 2018, Defendants informed Plaintiff that they could not meet that month's deadline and demanded additional payments to proceed with the project. (*Id.* at ¶ 64.) After failed attempts to negotiate terms on how to proceed, Plaintiff provided written notice of Defendants' breach of the MSA and SOW. (*Id.* at ¶ 73.) Defendants failed to cure the breach within thirty days. (*Id.* at ¶ 74.) By November 2018, Plaintiff had made payments of more than $600,000 for amounts owed under the SOW and SSOW, yet it received no deliverables from Defendants. (*Id.* at ¶¶ 75, 76.)

In December 2018, Plaintiff brought this lawsuit, asserting eight causes of action against Defendants. The first three are fraudulent inducement claims based on Defendants' various representations that caused Plaintiff (1) to enter the MSA and SOW, (2) to authorize moving forward with the development phase, and (3) to enter the SSOW. Plaintiff also asserts causes of action for (4) breach of contract, (5) violations of the Colorado Consumer Protection Act ("CCPA"), (6) breach of good faith, (7) unjust enrichment, and (8) negligent misrepresentation.

Defendants have moved to dismiss all but the breach of contract and breach of good faith claims. The gist of the non-contractual claims is that Plaintiff was harmed because it relied on Defendants' representations about their capabilities and their assurances about the timeline and costs for completing the project. The parties agree that Colorado law governs this dispute.

## III. DISCUSSION

### A. Tort Claims

Defendants argue that Plaintiff's fraudulent inducement and negligent misrepresentation claims are barred by the integration clause in the MSA and the economic loss rule. The Court disagrees.

#### 1. Integration Clause

The MSA contains the following integration clause: "This Agreement, together with any applicable SOW, contains the entire agreement between the parties with respect to the subject matter hereof, superseding and replacing any and all prior and contemporaneous agreements, understandings, offers and communications, both written and oral." (ECF No. 20-2 at 13.)

Under Colorado law, "[a] contract provision purporting to prohibit a party to the contract from asserting a claim for negligent misrepresentation must be couched in clear and specific language." *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 74 (Colo. 1991); *see also RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1171-72 (D. Colo. 2018) ("[G]eneral integration clauses do not bar claims based on misrepresentations related to contracts.").

The Court finds that the provision above does not clearly and specifically disclaim Plaintiff's reliance on all representations made by Defendants before entering into the

agreements at issue in this case. Indeed, the integration clause says nothing about Plaintiff's reliance or lack thereof, and Defendants have identified no other provision in the agreements that purports to limit their potential tort liability. *See Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Constr.,* LLC, 223 F. Supp. 3d 548, 556 (E.D. La. 2016) (citing *Keller* and applying Colorado law). Accordingly, the Court finds that the integration clause does not bar Plaintiff's tort claims.[1]

2. Economic Loss Rule

Colorado expressly adopted the economic loss rule in *Town of Alma, v. AZCO Construction, Inc.*, 10 P.3d 1256, 1264 (Colo. 2000), holding that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." To determine whether the rule applies, the critical question is whether the tort claims flow from an independent duty under tort law—not whether the claims are related to the promises that eventually formed the basis of the contract. *Van Rees v. Unleaded Software, Inc.*, 2016 CO 51, ¶ 12, 373 P.3d 603, 607. "Under Colorado law . . . the tort of negligent misrepresentation is based not on principles contractual obligation but on principles of duty and reasonable conduct." *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008) (quotation omitted).

*Van Rees* involved allegations that a web developer "induced [the plaintiff] to enter into a contractual agreement with false promises of its capabilities to perform web-related services." *Id.* at ¶ 3, 605. The Colorado Supreme Court concluded that the plaintiff's tort claims "based on

---

[1] The Court notes that *Steak n Shake Enterprises, Inc. v. Globex Co., LLC*, 110 F. Supp. 3d 1057 (D. Colo. 2015), is factually distinct from the present case. There, among other things, the integration clause specifically referenced an independent investigation of financial data by the franchisee which the evidence showed to be both sophisticated and extensive.

5

misrepresentations made prior to the formation of the contracts" were not barred by the economic loss rule. *Id.* at ¶ 15, 607. Defendants have not provided a persuasive reason why the Court should reach a different outcome here.

### B. Unjust Enrichment Claim

Defendants' argument on Plaintiff's unjust enrichment claim rests entirely on the premise that the tort claims should be dismissed. (ECF Nos. 20 at 20; 29 at 14.) Because the Court is not dismissing those claims, it also denies Plaintiff's motion with respect to this claim.

### C. CCPA Claim

"A claim brought under the CCPA must allege, inter alia, that the defendant's actions have a significant impact upon the public." *Gen. Steel Domestic Sales, LLC v. Hogan & Hartson, LLP*, 230 P.3d 1275, 1279 (Colo. App. 2010). Because the allegations do not establish that this is anything more than a private dispute, the Court concludes that this element is not satisfied and that Plaintiff fails to state a CCPA claim.

Plaintiff contends that Defendant 303 Software has a "general practice of making promises to consumers that it knows it cannot keep," that it "has a national reach," and that its "deceptive tactics have the potential to impact fintech consumers in the future." (ECF No. 28 at 16-17.) But Plaintiff has alleged no actual impact on any entity but itself, and these contentions are insufficient to raise a right to relief above the speculative level. "When a transaction is no more than a private dispute . . . it may be more difficult to show that the public has an interest in the subject matter." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 150 (Colo. 2003) (en banc). Moreover, conclusory allegations that fail to

6

identify harm or potential harm to identifiable segments of the public are insufficient to state a CCPA claim. *See Van Rees*, ¶ 26, 373 P.3d at 609. Accordingly, the Court dismisses this claim.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (ECF No. 20) is GRANTED as to Plaintiff's CCPA claim but DENIED in all other respects.

DATED this 10th day of May, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge